**Karen L. WINTERS, Plaintiff–Appellant,**

v.

**MTL SYSTEMS, INC., et al., Defendants–Appellees.**

No. 00–4313.

United States Court of Appeals, Sixth Circuit.

July 12, 2002.

Before KRUPANSKY and BOGGS, Circuit Judges; LAWSON,* District Judge.

of Michigan, sitting by designation.

PER CURIAM.

Plaintiff–Appellant Karen Winters ("Winters") has challenged the district court's award of summary judgment to Defendants–Appellees MTL Systems, Inc. ("MTL"), Arnold Fife ("Fife"), and James McCracken ("McCracken") in her gender discrimination and harassment action.

In 1995, Winters applied for a position, Administrator for the Computer Simulation Division, with MTL. At her interview, Winters spoke with several MTL employees, including McCracken. After the interview, McCracken phoned Winters and offered the position, which Winters accepted.

On September 27, 1995, Winters began work at MTL. At all times relevant to the case, McCracken was Winters' supervisor. In the late winter of 1996, Winters received a summons from the Greene County, Ohio Common Pleas Court for grand jury service. Winters informed MTL of the summons and began her term of service with the Greene County grand jury in March of 1996.

On March 8, 1996, Winters informed John Ream ("Ream"), MTL's Vice President of Administration, that McCracken had made unwelcome advances and that she felt uncomfortable around him. Ream encouraged Winters to contact Sue App ("App"), MTL's Manager of Human Resources. Ream assured Winters that she would not be discharged for making a complaint.

Ream then called App and informed her of the allegations against McCracken. App then requested a meeting with Winters to discuss the charges. App then asked Winters to call her if Winters had any further problems. App confronted McCracken with these allegations and asked him to respond to each individually.

App then instructed McCracken to avoid being alone with Winters and to maintain physical distance between them. App also warned McCracken against discussing things of a personal nature with Winters.

Both Ream and App informed Fife, MTL's President, about Winters' allegations. Fife then met with McCracken and cautioned him as had App. Over the next couple of months, App and Ream visited Winters' work area unannounced to ensure that the matter had been resolved. Neither saw anything questionable. In addition, App and Fife spoke to several employees in Winters' work area, none of whom confirmed Winters' allegations.

Shortly after making her sexual harassment allegation, in March of 1996, Winters reported for grand jury duty. Winters claimed over the next five months that she was serving on the grand jury, charging over two-hundred hours to grand jury service on her time cards. According to App and Fife, in August of 1996, Herb Hirsch, an engineer in Winters' division, complained to App that Winters' absences were taking a toll on the division.[1] App asked Fife to contact the Greene County Prosecutor's office to obtain Winters a discharge from grand jury service.

Fife phoned the prosecutor's office and spoke with Assistant Prosecutor Dave Mesaros ("Mesaros"). Fife asked Mesaros if he could excuse Winters from further service. Mesaros checked into the situation and discovered that Winters had not served on the grand jury since April of 1996. Fife told Mesaros that Winters had provided MTL with written excuses from the prosecutor's office which verified her grand jury service. Suspecting that the excuses were forged, Mesaros asked Fife to fax all such excuses to him. Mesaros

---

1. Hirsch has speculated that he initially talked to Fife in April of 1996 about the toll

Winters' grand jury service was exacting on the division.

then asked Detective David Potts ("Potts") of the Beavercreek, Ohio Police Department to investigate Winters for theft and forgery.

On August 26, 1996, Detective Potts and a fellow officer went to MTL and escorted Winters to the Beavercreek police station. Detective Potts questioned Winters about her grand jury service. Winters confessed to lying to MTL, falsifying her time cards, and forging excuses from the prosecutor's office. In her conversation with Detective Potts, Winters claimed that she stayed at home to avoid McCracken and that she had attempted to do her work from home.

MTL then placed Winters on administrative leave. On the same date, August 26, 1996, Fife issued a memo to MTL employees:

Beavercreek detectives have questioned Ms. Winters about time spent on Grand Jury duty the past five months. We have little information to offer at this time, however, when we know more we will share it with you. Ms. Winters has been placed on Administrative Leave until this issue has been cleared up. In the meantime if you are contacted by Ms. Winters, do not discuss this or any other issue that involves MTL with her.

On August 29, 1996, Winters was indicted on grand theft and forgery. On August 30, 1996, Fife terminated Winters' employment with MTL. On September 3, 1996, Fife issued a second memo to employees:

Karen Winters has been indicted by the Greene County Grand Jury and charged with theft and forgery. Ms. Winters' employment with MTL Systems has also been terminated for falsification of time cards.

On November 20, 1996, after being advised of her rights, Winters pled guilty to both charges. The court sentenced Winters to two years in prison, but then suspended the sentence for a probationary period in which Winters was to pay restitution to MTL and to perform one hundred hours of community service. Several newspapers reported Winters' indictment and guilty plea.

On February 19, 1997, Winters filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming sexual harassment and discrimination. On July 15, 1997, the EEOC issued Winters a Notice of Right to Sue.

On October 10, 1997, Winters filed a complaint in federal court, advancing seven claims: (1) sexual discrimination; (2) sexual harassment; (3) retaliation; (4) breach of contract; (5) promissory estoppel; (6) infliction of emotional distress; and (7) invasion of privacy. In addition to declaratory relief and backpay, Winters requested $6,750,000 in compensatory damages and $8,500,000 in punitive damages.

On June 30, 1999, MTL and Fife filed a motion for summary judgment. On the same date, McCracken filed a motion for summary judgment. Confronted by motions for summary judgment by the defendants-appellees, the district court referred the case to a magistrate judge for report and recommendation. On December 7, 1999, the magistrate judge recommended dismissal of Winters' action, concluding that Winters had not adduced evidence supporting her various claims. On September 20, 2000, the district court adopted the magistrate judge's recommendation and dismissed the case.[2] On October 18, 2000, Winters timely appealed.

This court has carefully reviewed the materials contained in the Joint Appendix

---

2. Per the magistrate judge's recommendation, the district court dismissed Winters' state law claim of sexual harassment against McCrack-en without prejudice. Winters has not challenged that ruling before this court.

and the arguments presented in the briefs of counsel submitted by the parties and concludes that the district court's award of summary judgment to the defendants was mandatory as a matter of law. This reviewing court therefore adopts the magistrate judge's well-reasoned report and recommendation entered December 7, 1999.[3]

Accordingly, the judgment of the district court is **AFFIRMED.**

---

**3.** Winters has advanced a number of challenges to the magistrate judge's evidentiary rulings. After a thorough review of Winters' contentions, this court finds that the magistrate judge did not abuse his discretion.